```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                 EASTERN DISTRICT OF OKLAHOMA

ANTONIA ORTIZ,                  )
                                )
           Plaintiff,           )
                                )
                                )   Case No. CIV-20-256-RAW-KEW
                                )
                                )
COMMISSIONER OF THE SOCIAL      )
SECURITY ADMINISTRATION,        )
                                )
           Defendant.           )
```

## REPORT AND RECOMMENDATION

Plaintiff Antonia Ortiz (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. The Claimant appeals the Commissioner's decision, asserting that the Administrative Law Judge ("ALJ") incorrectly determined she was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Claimant's Background

The Claimant was 40 years old at the time of the ALJ's decision. She has an eighth-grade education and has worked in the past as a nurse aide. The Claimant alleges an inability to work beginning on June 1, 2012. She claims this inability stems from limitations resulting from fibromyalgia, degenerative disc disease, and degenerative joint disease.

1

**Procedural History**

On July 11, 2017, the Claimant filed an application for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, et seq.) of the Social Security Act. Her claim was initially denied and was also denied upon reconsideration. On May 2, 2019, ALJ J. Leland Bently, held an administrative hearing in McAlester, Oklahoma. On June 7, 2019, ALJ Bently issued an unfavorable decision. The Claimant requested review by the Appeals Council and the Council denied such request on May 28, 2020. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ followed the five-step sequential process that the Social security regulations use to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1] Between Step Three and Four

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the

the ALJ determined that Claimant had the residual functional capacity ("RFC") to perform light work with additional limitations, including:

> stand[ing] and/or walk[ing] for 4 hours in an 8-hour work day, occasionally climbing stairs and ramps; occasionally stooping, kneeling, crouching, and crawling; and a sit stand option defined as a brief positional change from sitting to standing and vice versa with no more than one change in position every 20 minutes and without leaving the work station so as not to dimmish pace or production.

(Tr. 18). The ALJ also determined that the Claimant had the mental capacity to "understand, remember, and apply simple routine instructions . . . in order to complete simple routine tasks with routine supervision[.]" (Tr. 18). The ALJ did conclude that this RFC would not allow the Claimant to return to her past relevant work. (Tr. 22). Thus, the ALJ presented the RFC limitations to a vocational expert ("VE") to determine if there were jobs in the national economy which the Claimant could perform. (Tr. 47-50). Given the limitations, the VE identified six jobs from the Dictionary of Occupational Titles (DOT) which the Claimant could perform. (Tr. 47-50). At Step Five — based on the VE's testimony, the Claimant's RFC, age, education, and work experience — the ALJ concluded that the Claimant was capable of performing all six of

---

Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

the jobs identified. (Tr. 23). Thus, she was not disabled. (Tr. 23).

## Errors Alleged for Review

The Claimant asserts that the ALJ erred in two ways. First, the ALJ's RFC is flawed, and Claimant cannot perform any of the jobs found for her. Second, the ALJ failed to properly consider the medical source opinion of Dr. Daniel Stegman, DO. Due to these errors, the Claimant believes the ALJ's determination is not based off substantial evidence.

## Social Security Law and Standard of Review

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A).

Judicial review of the Commissioner's final determination is limited to two inquiries: first, whether the correct legal standards were applied; and second, whether the decision was supported by substantial evidence. *Noreja v. Comm'r, SSA*, 952 F.3d.

1172, 1177 (10th Cir. 2020). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "It means — and means only — 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) *(*quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01. The Commissioner's decision will stand, even if a court might have reached a different conclusion, as long as it is supported by substantial evidence. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

### RFC Assessment

The Claimant contends that the ALJ's RFC is faulty and that she cannot perform any of the jobs identified for her. The Claimant asserts she should be limited to sedentary work and the jobs requiring level two and three reasoning should be omitted. For the reasoning addressed below, the undersigned Magistrate Judge finds these assertions unpersuasive.

The Claimant argues because the ALJ'S RFC stated she could only stand/walk for four hours, she is limited to sedentary work, not light work. Therefore, she cannot perform the jobs of self-service store attendant, merchandise marker, and mail sorter. The Claimant asserts that for an RFC to permit any type of light work, she must be able to stand/walk for a total of approximately six hours. While the Commissioner does not dispute the fact that the primary difference between sedentary work and most light work is the standing requirement, there are still light work jobs that do involve sitting, meaning that the ALJ's RFC is consistent with a limited range of light work. *See Anders v. Berryhill*, 688 F. App'x 514, 521 (10th Cir. 2017) (citing SSR 83-12, 1983 WL 31253, at *4 (1983) (stating that although most light work involves prolonged standing, an ALJ should consult a VE "[i]n cases of unusual limitation of ability to sit or stand")).

"The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT." SSR 00-4P, 2000 WL 1898704 at *3 (2000). The hypothetical provided to the VE at the hearing included these additional limitations, and yet the VE still found that the Claimant could perform these light work jobs with the additional limitations. (Tr. 47-48). The

VE's testimony that Claimant can perform the identified jobs, despite the additional limitations, constitutes substantial evidence supporting the Commissioner's decision. *See Ellison v. Sullivan*, 929 F.2d 534, 537 (10th Cir. 1990) ("The ALJ properly relied on the testimony of a vocational expert that plaintiff had the residual functional capacity for a limited range of light work and there were jobs he could perform. This testimony is substantial evidence supporting the ALJ's conclusion that plaintiff was not disabled.").

The fact that the VE was aware of the additional limitations when she determined these jobs also negates the Claimant's assertion that there are conflicts between the VE's testimony and the DOT. *See e.g., Segovia v. Astrue*, 226 F. App'x. 801, 804 (10th Cir. 2007) (unpublished) ("[t]he VE was aware of Mr. Segovia's limitations on overhead reaching, and he testified both that she could perform the jobs he identified and that his opinion of the jobs open to her was consistent with the DOT's specifications. ... In these circumstances, the VE's testimony does not conflict with the DOT and SCO so much as it clarifies how their broad categorizations apply to this specific case."). The sit/stand option which the Claimant asserts causes a conflict between the VE testimony and the DOT was included in the hypothetical posed to the VE. (Tr. 47-48). Yet, the VE still determined the Claimant could perform the jobs in question. (Tr. 47-48). This provides

7

further substantial evidence to support the ALJ's decision. *Ellison*, 929 F.2d at 537.

The Claimant next asserts that she cannot perform any of the jobs identified for her because they require reasoning levels of two or three, a reasoning level beyond her RFC. The RFC outlined by the ALJ limits the Claimant to "simple routine work tasks with routine supervision." (Tr. 18). The Claimant argues that the jobs which require a reasoning level of three are impossible for her to perform under the ALJ's RFC because "simple routine work" does not align with level two or three reasoning.

While an RFC which limits one to simple and routine tasks is more consistent with the demands of level-two reasoning, if other jobs remain this error is harmless and does not constitute a need for remand. *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005); *see also Anderson v. Colvin*, 514 F. App'x. 756, 764 (10th Cir. 2013) ("[a]ssuming there was a conflict between the VE's testimony and the DOT, the ALJ's failure to resolve the alleged conflict was harmless error" because the VE identified at least two jobs with a reasoning level of one."). This Court does not agree with Claimant's assertion that her RFC would eliminate the jobs requiring level-two reasoning because the Tenth Circuit has specifically held that RFC's which allow for one to complete "simple and routine work tasks" align with level-two reasoning. *Hackett*, 395 F.3d at 1176. However, this Court does agree with the

8

Claimant's assertion that the ALJ's RFC would eliminate the jobs identified by the VE which require level-three reasoning (document preparer and self-service store attendant). But, even so, this is harmless error as it would leave the jobs of merchandise marker, mail sorter, tube operator and addresser. These are jobs which the ALJ found existed in significant numbers, as discussed below. Therefore, the error is harmless.

Finally, the Claimant argues that because of the jobs which must be eliminated only two jobs remain and the available jobs are insufficient. As discussed above, this Court is unpersuaded by the Claimant's argument that all the jobs requiring a light exertion level and a reasoning level of two should be eliminated but does agree with the elimination of jobs requiring level-three reasoning. This leaves the jobs of merchandise marker, mail sorter, tube operator and addresser. The VE testified that there were 310,000 merchandise marker jobs, 41,000 mail sorter jobs, 30,000 tube operator jobs, and 40,000 addresser jobs, or 421,000 total.

The determination that work can be performed in significant numbers is considered case-specific, and "the issue of numerical significance entails many fact-specific considerations requiring individualized language as applied to a particular claimant's factual situation." *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) (quoting *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992)). The Tenth Circuit has held that this finding is not

9

limited to local or regional numbers but is instead a determination of whether work exists in significant numbers in the regional or national economy. *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009). Here, the Court is persuaded that 421,000 jobs available nationally for the remaining jobs is significant. *See Fox v. Colvin*, 2015 WL 5178414, at *4 (W.D. Okla. Sept. 3, 2015) ("The *Rogers [v. Astrue*, 312 F. App'x. 138, 142 (10th Cir. 2009)] decision came out the same year as *Raymond*, and that court implicitly found, as a matter of law, without engaging in a multi-factor analysis, that 11,000 jobs in the national economy is significant. The Court is persuaded by *Rogers* and finds that 32,000 utility tractor jobs in the national economy is also significant."); *see also Stokes v. Astrue*, 274 F. App'x. 675, 684 (10th Cir. 2008) (holding that because there were still 11,000 jobs available regionally and 152,000 available nationally after two jobs were eliminated based on reasoning level, the Court did not believe any "reasonable factfinder could have determined that suitable jobs did not exist in significant numbers in either the region where Ms. Stokes lives or several regions of the country.").

### Consideration of Medical Opinions

The Claimant also argues that the ALJ failed to properly assess the medical source opinions and that the ALJ's decision to discredit the opinion of treating physician, Dr. Stegman, was unsupported and inconsistent with the evidence of the record. The

10

Claimant contends that in order for the ALJ to discredit the opinion of the treating physician, he must provide "substantial evidence to the contrary," which he fails to do. But, as Defendant properly points out, under the new regulations [2] the ALJ does not "defer or give specific evidentiary weight. . . to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520(c)(a). An ALJ considers medical opinions utilizing five factors: (1) supportability, (2) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The ALJ must utilize these factors when determining how persuasive he finds the medical opinions and prior administrative medical findings. 20 C.F.R. §§ 404.1520c(b), 416.920c(b).

---

[2] The Claimant applied for benefits on or after March 27, 2017, meaning that the medical opinion evidence is subject to evaluation pursuant to 20 C.F.R. §§ 404.1520c, 416.920c.

Generally, when examining medical opinions, the ALJ must only specifically explain how he considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b). However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [he] will articulate how [he] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5)[.]" 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

An ALJ continues to have the duty to evaluate every medical opinion in the record regardless of its source. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). He may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004); *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (finding an ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability"). If he rejects an opinion completely, the ALJ must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

The ALJ's statements reflect that he fully considered Dr. Stegman's medical opinion, his examinations, and his treatment notes. (Tr. 21). The ALJ provided the following explanation

regarding Dr. Stegman's opinion:

> I find that the opinion of Dr. Stegman . . . is not consistent with or supported by the longitudinal medical evidence (Exhibit 7F). Further, it is inconsistent with his treating notes and cursory examinations noting largely normal exams. (Exhibit 8F/58, 78, and 79) . . . the limitations are inconsistent with the claimant's limitations she reported at the consultative examination and the diagnostic and clinical findings. Finally, Dr. Stegman's opinion provides no nexus between the limitations of impairments. For instance, he opined that she cannot travel without a companion, walk a block on an uneven surface, use public transportation, or lift/carry anything over 10 pounds; however, such limitations are inconsistent with what she reported at the consultative examination. Furthermore, treatment notes do not document any significant physical examination findings other than occasional limited range of motion of the lumbar spine, spasms, tender points, all other aspects of her examinations remained normal. There is no evidence of gait abnormalities or use of an assistive device despite Dr. Stegman's opinion that she cannot walk a block on an uneven surface . . . **For such reasons, I do not find Dr. Stegman's opinion persuasive as it is inconsistent with the conservative course of treatment, the effectiveness of treatment, her presentation at times during visits, the lack of specialty care, and the reported activities of daily living.**

(Tr. 21) (emphasis added). The ALJ specifically articulates why he did not find the opinion persuasive, expressly considering the supportability and consistency factors. (Tr. 21). The ALJ's discussion of Dr. Stegman's opinion meets the requirements of the regulations and the ALJ's decision to disregard Dr. Stegman's opinion is supported by substantial evidence. For this Court to find otherwise would require it to reweigh evidence, which it cannot do. *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016).

When all the evidence is considered, the conclusion that the Claimant could perform a reduced range of light work is supported by substantial evidence. *See Hill v. Astrue*, 289 F. App'x. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of h[er] RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [s]he can determine RFC within that category.'") (quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). The ALJ specifically noted every medical record available in this case after the alleged onset date, gave reasons for his RFC determination, and ultimately found that the Claimant was not disabled. Accordingly, the decision of the Commissioner should be affirmed.

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate

review of this decision by the District Court based on such findings.

DATED this 15th day of August, 2022.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE